IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAYSHIA TAYLOR, | 3:14-CV-01472-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Commissioner, Social Security Administration, | |
| Defendant. | |

MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

    Attorneys for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

      Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Dayshia Taylor seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on November 1, 2010, and alleged a disability onset date of January 1, 2008. Tr. 173-77, 179.[1] Her applications were denied initially and on

---

[1] Citations to the official transcript of record filed by the Commissioner on January 29, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

reconsideration. An Administrative Law Judge (ALJ) held a hearing on December 6, 2012. Tr. 31-82. At the hearing Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney.

On March 1, 2013, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 14-30. On July 25, 2014, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-4. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on October 31, 1992, and was 20 years old at the time of the hearing. Tr. 83. Plaintiff has a tenth-grade education. Tr. 40. She does not have any past relevant work experience. Tr. 26.

Plaintiff alleges disability due to epilepsy. Tr. 83.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. See Tr. 23-25.

## STANDARDS

The initial burden of proof rests on the claimant to

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

4 - OPINION AND ORDER

ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). See also 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). See also *Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commis-

5 - OPINION AND ORDER

sioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). See also Keyser, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). See also Keyser, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). See also Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

6 - OPINION AND ORDER

Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ noted Plaintiff testified at the hearing that she earned approximately $1,200 per month babysitting her niece and two nephews from February 2012 through November 2012, which "rises above the level of substantial gainful activity for 2012." Tr. 19. Nevertheless, the ALJ found Plaintiff had not engaged in substantial gainful activity since her November 1, 2010, application date because there was not any documentation of

7 - OPINION AND ORDER


Plaintiff's alleged earnings in the record. Tr. 19.

At Step Two the ALJ found Plaintiff has the severe impairments of epilepsy, borderline intellectual functioning, and depression. Tr. 19. The ALJ found Plaintiff's impairment of obesity is not severe. Tr. 19.

At Step Three the ALJ concluded Plaintiff's impairments or combination of impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform light work. Tr. 21. The ALJ found Plaintiff can climb ramps or stairs occasionally and should never climb ladders, ropes, or scaffolds. Tr. 21. The ALJ also found Plaintiff should avoid "workplace hazards such as dangerous machinery and unprotected heights." Tr. 21-22. The ALJ found Plaintiff is limited to "simple to moderately complex tasks, which for example could mean the amount of decision making involved in childcare, but not extremely complex tasks." Tr. 22. Finally the ALJ found Plaintiff "requires the flexibility to be absent for medical reasons one day per month." Tr. 22.

At Step Four the ALJ found Plaintiff does not have any past relevant work experience. Tr. 26.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 26. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she improperly gave limited weight to the opinions of Barbara Long, M.D., and Juliana Lockman, M.D., treating physicians and to the opinion of Ronal Duvall, Ph.D., examining psychologist.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas,* 278 F.3d at 957. *See also Lester v. Chater,* 81 F.3d 821, 830-32.

When "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the Court credits the opinion as true. *Benecke v. Barnhart* 379 F.3d 587, 594 (9th Cir. 2004). *See also Lester,* 81 F.3d at 834 (court credited the improperly rejected physician opinion as a matter of law).

## I. Drs. Long and Lockman

On November 28, 2012, Dr. Long, Plaintiff's treating physician, completed a Medical Source Statement in which she indicated Plaintiff suffered approximately one seizure per month lasting 30 minutes on average. Tr. 774. Dr. Long noted Plaintiff reported she suffered confusion, exhaustion, and/or irritability for "variable" lengths of time after a seizure. Tr. 774. Dr. Long stated Plaintiff was compliant with taking her seizure medications, and she was "not aware" of any side effects that Plaintiff experienced as a result of her seizure medication. Tr. 774. Dr. Long opined the seizure symptom that would interfere with Plaintiff's ability to sustain "the basic attention and concentration needed to perform even simple work tasks" is a concern of Plaintiff because of the "unpredictable nature of occurrence [sic] of seizure activity." Tr. 775. Dr. Long stated she did not know whether Plaintiff's seizures would likely increase if she was placed in a competitive work environment, but Plaintiff's "anxiety level [was] likely to increase" in a competitive work environment. Tr. 775. Dr. Long found Plaintiff's seizures were likely to disrupt coworkers and that Plaintiff would need to take unscheduled breaks during an eight-hour work day. Tr. 775-76. Dr. Long opined Plaintiff might initially have to take unscheduled breaks frequently, but that "should improve over time given experience with working."

Tr. 776. Finally Dr. Long opined Plaintiff would likely miss 16 hours or more of work per month. Specifically, Dr. Long stated she would "expect [Plaintiff] to be out 1-7 days with each seizure based on severity." Tr. 776.

On December 3, 2012, Dr. Lockman, Plaintiff's treating neurologist, provided a Medical Source Opinion in which she noted Plaintiff suffers 2-3 seizures per month, which can cause Plaintiff to suffer confusion, exhaustion, and/or headaches for "up to several hours" afterwards. Tr. 778. Dr. Lockman stated Plaintiff was "not always" compliant with taking her seizure medication, and her failure to take sufficient medication "ma[de] a difference in the frequency of [Plaintiff's] seizures." Tr. 778. Dr. Lockman stated Plaintiff suffered from side effects of lethargy, lack of alertness, and poor appetite as a result of her medication. Tr. 779. Dr. Lockman opined Plaintiff's "difficulty maintaining concentration" could interfere with her ability to sustain the attention and concentration needed to perform even simple work tasks. Tr. 779. Dr. Lockman also opined Plaintiff's seizures would likely increase if she was placed in a competitive work environment because such an environment would be stressful and "stressful situations are triggers for [Plaintiff's] seizures." Tr. 779. Dr. Lockman noted Plaintiff would sometimes need to take unscheduled breaks "up to several hours" in an eight-hour work day, and she expected

11 - OPINION AND ORDER

Plaintiff to miss 16 hours of work a month because of suffering 1-3 seizures per month. Tr. 780.

The ALJ gave limited weight to the opinions of Drs. Long and Lockman that Plaintiff's symptoms would interfere with her ability to perform even simple work tasks in a sustained manner, that she would need to take unscheduled breaks in an eight-hour work day, and that she would likely miss at least two days of work per month as a result of her condition. The ALJ noted the frequency and severity of Plaintiff's epilepsy is "difficult to determine given her noncompliance with recommended medical treatment." Tr. 25. The ALJ also noted the doctors' opinions were inconsistent with Plaintiff's daily activities that include attending online schooling and babysitting her niece and nephews. The record, however, reflects when Plaintiff was babysitting, her mother was usually home and available to assist her in case she had a seizure. In addition, although Plaintiff had some issues with compliance with her medication early in the record mainly due to issues with pharmacies prescribing a generic brand at a different dosage level and fluctuations in Plaintiff's weight, the record later reflects Plaintiff was consistently compliant with taking her medication but still suffered seizures. For example, on June 13, 2012, Plaintiff was admitted to the emergency room for multiple seizures. Tr. 646. At that time Plaintiff's mother reported Plaintiff was completely compliant

with her medication, her seizures were in better control than they had been in three years, and Plaintiff was suffering approximately two seizures per month. Tr. 646. When Plaintiff was admitted to the emergency room in November 2011 due to multiple seizures, the doctor noted Plaintiff likely experienced the seizures because of her admitted noncompliance with medication. On the June 13, 2012, occasion, however, Plaintiff's mother reported Plaintiff took her medications "religiously." Tr. 681. On August 19, 2012, Plaintiff was admitted to critical care for seizures. It was noted by her treating physician that she was compliant with her medication, but she had been under increased stress and suffered a number of seizures that day. Tr. 542. On September 30, 2012, Plaintiff reported suffering two seizures that month even though she had been taking her medication as prescribed. Tr. 610, 615.

In addition, the ALJ did not point to any opinion by any treating or examining physician that contradicts the opinions of Drs. Long and Lockman as to the frequency and duration of Plaintiff's seizures, the after-effects of her seizures, or her likelihood of missing 16 hours per month of work.

On this record the Court concludes the ALJ erred when she gave limited weight to the opinions of Drs. Long and Lockwood

that Plaintiff's symptoms would interfere with her ability to perform even simple work tasks, that she would need to take unscheduled breaks in an eight-hour work day, and that she would likely miss at least two days of work per month as a result of her condition because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  Dr. Duvall

Plaintiff contends the ALJ erred when she gave limited weight to the opinion of Dr. Duvall, examining psychologist.

On March 28, 2011, Dr. Duvall completed an Intellectual Assessment of Plaintiff in which he diagnosed Plaintiff with mild dysthymia and borderline intellectual functioning.  Tr. 289. Dr. Duvall concluded Plaintiff's "particular combination of Borderline Intellectual Functioning (I.Q. 74) and her continuing problems with Epilepsy render her a poor candidate for competing successfully for a job."  Tr. 290.  Specifically, Dr. Duvall noted he

> expect[ed] Plaintiff to have difficulty following and recalling complex work instructions; maintaining and [sic] adequate pace and persistence; withstanding the stress of a routine work day; maintaining emotional stability and predictability; and maintaining appropriate work relationships and communicating effectively.

Tr. 290.

The ALJ gave limited weight to Dr. Duvall's opinion on the ground that it was "inconsistent with [Plaintiff's] relatively conservative course of mental health treatment, as well as her daily activities. . . . Dr. Duvall's opinion was similarly based in part on [Plaintiff's] less than fully credible self-report." Tr. 25. Dr. Duvall, however, found Plaintiff's mental-health condition in combination with her epilepsy kept her from being a good candidate for employment. Even if Plaintiff's mental-health treatment was relatively conservative, the record reflects her epilepsy caused ongoing issues. In addition, Dr. Duvall conducted numerous tests to reach his diagnosis of Borderline Intellectual Functioning, including the Wechsler IQ test. Dr. Duvall reported Plaintiff gave good effort on those tests, and, therefore, he did not rely solely on Plaintiff's self-report to reach his diagnosis. Finally, the ALJ did not point to any opinion by any treating or examining physician that contradicts Dr. Duvall's opinion.

On this record the Court concludes the ALJ erred when she gave limited weight to Dr. Duvall's opinion because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## REMAND

When "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the Court credits the opinion as true. Benecke v. Barnhart 379 F.3d 587, 594 (9th Cir. 2004). See also Lester, 81 F.3d at 834 (improperly rejected physician opinion court credited as matter of law).

Drs. Long and Lockwood opined Plaintiff would miss 16 hours per month of work due to her impairments, symptoms, or medication side-effects.

The VE testified at the hearing that Plaintiff would be unable to maintain jobs in the regional or national economy if she had to miss work two or more days per month. Tr. 80. Accordingly, because the Court credits the opinions of Drs. Long and Lockwood that Plaintiff would likely miss 16 hours per month of work and because missing two or more days of work per month would rule out competitive work, the Court concludes Plaintiff is disabled. The Court, therefore, reverses the decision of the Commissioner and remands this matter for the immediate calculation and award of benefits.

## CONCLUSION

For these reasons, the Court the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 8th day of September, 2015.

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER